# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAUL SHIFFLETT** | : | **CIVIL ACTION** |
| *Plaintiff*, pro se | : | |
| | : | **NO. 16-6537** |
| **v.** | : | |
| | : | |
| **MR. KORSZNIAK**, *et al*. | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                    JULY 12, 2017

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Paul Shifflett ("Plaintiff"), a state inmate proceeding *pro se*, filed a civil action pursuant to 42 U.S.C. § 1983 ("§1983"), against numerous individuals, averring that they violated his First and Eighth Amendment constitutional rights. [ECF 1]. Specifically, Plaintiff alleges that these individuals violated his First Amendment rights by retaliating against him for filing grievances, and violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs while incarcerated.

Before this Court are four separate *motions to dismiss* filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), each seeking the dismissal of Plaintiff's complaint for failure to state a claim on which relief can be granted; *to wit*: a motion by Joseph Korszniak, Dr. Ronald J. Burkholder, and Dr. Michael J. Bianco (collectively, "Corrections Defendants"), [ECF 16], a motion by Dr. Joseph P. Mulligan, [ECF 20], a motion by Dr. Pamela Roehm, [ECF 21], and a motion by Dr. Muhammad Golsorkhi.[1] [ECF 24]. Collectively, this Court will refer to these

---

[1]     Plaintiff also filed his complaint against a seventh individual, Defendant Dr. Christian. As of the date of this Order, however, Dr. Christian has yet to be served. Notwithstanding the lack of service, since Plaintiff has alleged that Defendant Dr. Christian is employed in the same capacity as Defendants Dr.

Defendants as "Moving Defendants." Plaintiff has filed responses opposing three of the motions to dismiss.[2] [ECF 25, 27, 28]. The issues in the motions to dismiss have been fully briefed by the parties and, therefore, are ripe for disposition.[3]

For the reasons stated herein, Moving Defendants' motions to dismiss are granted.[4]

**BACKGROUND**

As noted, Plaintiff asserts claims for the violations of his First and Eighth Amendments rights, premised upon a retaliatory prison transfer and deliberate indifference to his serious medical need, respectively. When ruling on a motion to dismiss, this Court must accept as true all factual allegations in Plaintiff's complaint, and construe the complaint in the light most favorable to Plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). The following is a summary of the allegations in Plaintiff's complaint; *to wit*:

---

Golsorkhi, Dr. Bianco, and Dr. Burkholder, and because there are no material differences in those claims and the claims against Defendant Dr. Christian, this Court finds that any legal determinations herein regarding Plaintiff's claims against Defendants Dr. Golsorkhi, Dr. Bianco, and Dr. Burkholder similarly apply to Defendant Dr. Christian.

[2] Plaintiff did not file a response to Defendant Dr. Golsorkhi's motion to dismiss. However, since Plaintiff's responses to the other motions to dismiss are generally applicable to all Defendants, and in light of Plaintiff's *pro se* status, this Court will not consider Defendant Dr. Golsorkhi's motion as unopposed, but rather as addressed by Plaintiff's multiple responses to the other motions to dismiss.

[3] In its determinations, this Court has also considered Corrections Defendants' brief in support of their motion to dismiss, [ECF 17], Corrections Defendants' reply brief, [ECF 30], Plaintiff's respective sur-reply, [ECF 33], Defendant Dr. Mulligan's reply brief, [ECF 31], Plaintiff's respective sur-reply, [ECF 32], and Corrections Defendants' three certificates of concurrence with the other Moving Defendants' motions to dismiss. [ECF 22, 23, 26].

[4] This dismissal also includes all claims against Defendant Dr. Christian. *See Thomas v. Warren*, 2016 WL 7217207, at *6 n. 2 (D.N.J. 2016) (dismissing identical claims against unserved defendants "because the [c]ourt has dismissed all federal claims against the [m]oving [d]efendants based on Plaintiff's failure to state a claim upon which relief may be granted."); *Houseknecht v. Brulo*, 2012 WL 5864378, at *2 (M.D. Pa. 2012) (dismissing claims against unserved defendants because the basis for dismissal of claims against the moving defendants "would similarly bar plaintiff's claims against the 'unserved' defendants."), *adopted*, 2012 WL 5862738 (M.D. Pa. 2012).

Plaintiff is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"). (Compl. ¶3). The Defendants are: Dr. Pamela Roehm ("Defendant Dr. Roehm"), an ear, nose, and throat specialist employed at Temple University Hospital ("Temple"), (*id*. at ¶9); Dr. Joseph Mulligan ("Defendant Dr. Mulligan"), an oral dental specialist also employed at Temple, (*id*. at ¶10); Dr. Christian ("Defendant Dr. Christian") and Dr. Muhammad Golsorkhi ("Defendant Dr. Golsorkhi"), medical doctors employed by Correct Care Solution ("CCS") and contracted with the DOC, (*id*. at ¶¶5-6); Dr. Ronald J. Burkholder ("Defendant Dr. Burkholder") and Dr. Michael J. Bianco ("Defendant Dr. Bianco"), dentists employed by CCS and contracted with the DOC, (*id*. at ¶¶7-8); and Joseph Korszniak ("Defendant Korszniak"), the Corrections Health Care Administrator at the State Correctional Institution in Graterford, ("SCI Graterford"). (*Id*. at ¶4).

On April 6, 2016, Plaintiff, then an inmate at SCI Graterford, had an altercation with other inmates and, as a result, suffered a broken jaw. (*Id*. at ¶12). The next day, Plaintiff was taken to Temple for surgery on his jaw. (*Id*. at ¶13). On April 8, 2016, Defendant Dr. Roehm performed the surgery, which consisted of inserting two plates on the left side of Plaintiff's jaw, and Plaintiff received post-surgical medication for approximately ten days. (*Id*. at ¶¶9, 14). On April 21, 2016, Plaintiff returned to Temple for a follow-up appointment and to have his external stitches removed. (*Id*. at ¶¶16, 17). During this appointment, Plaintiff "complained of excruciating pain," but claims he did not receive any pain medication. (*Id*. at ¶16).

On May 4, 2016, Plaintiff filed Grievance No. 625021 at SCI Graterford claiming that he "was not being treated" for his pain, and had not received responses to his Sick-Call slips. (*Id*. at ¶18). In the grievance, Plaintiff contended that the Medical Department had stopped his pain medication, and that he received Motrin, although not at the proper times of the day nor the correct number of dosages per day. (Compl. Ex. A at 1). He also complained that Defendant Dr. Christian lied to him about his pain management options. (*Id*.).

On May 11, 2016, Plaintiff filed Grievance No. 626028 at SCI Graterford, complaining that his Sick-Call slips were being ignored, that Defendant Dr. Christian's interactions with him had been rude and unprofessional, and requesting that he not be seen by Defendant Dr. Christian in the future. (Compl. Ex. B at 1).

On May 12, 2016, Plaintiff returned to Temple for a second follow-up appointment. He complained of pain and facial swelling and alleges that Defendant Dr. Roehm recommended "increas[ing] plaintiff's 600mg of Motrin."[5] (*Id*. at ¶20). However, when he returned to SCI Graterford, the Medical Department did not give him the recommended increased dosage. (*Id*.).

---

[5] Plaintiff did not specify what his dosage was prior to this recommended increase, which doctor had initially prescribed him the Motrin, or when that preexisting prescription began.

On May 24, 2016, Defendant Dr. Golsorkhi examined Plaintiff at SCI Graterford. (*Id*. at ¶21). Plaintiff asked Defendant Dr. Golsorkhi to increase his Motrin in accordance with Defendant Dr. Roehm's recommendation, but Defendant Dr. Golsorkhi declined to do so, explaining that an increase of Motrin posed a risk of long-term damage to Plaintiff's health. (*Id*.). Plaintiff then asked Defendant Dr. Golsorkhi for stronger medication, but Defendant Dr. Golsorkhi declined the request. (*Id*.). Defendant Dr. Golsorkhi referred Plaintiff to the Dental Department to discuss his desire for stronger medication with a dentist. (*Id*.).

Two days later, Defendant Dr. Burkholder saw Plaintiff at SCI Graterford. (*Id*. at ¶22). Plaintiff alleges that, after taking an x-ray of Plaintiff's jaw, Defendant Dr. Burkholder expressed disagreement with how Plaintiff's surgery was done and opined that mistakes in Plaintiff's surgery were responsible for Plaintiff's continued pain and facial swelling. (*Id*.). Plaintiff then asked Defendant Dr. Burkholder for pain medication, but Defendant Dr. Burkholder declined the request and told Plaintiff that Plaintiff's pain was a medical issue. (*Id*.)

On May 27, 2016, Plaintiff received the Initial Review Responses to both of his grievances from Defendant Korszniak. (*Id*. at ¶23; Compl. Ex. A at 2); *to wit*: Grievance No. 625021 was upheld, in part, and denied, in part, on the basis that: (1) Plaintiff was not being neglected because he was receiving medication for his condition; (2) "[e]very provider here knows that medicines are only delivered to [Plaintiff's unit] twice a day and they also know that if they prescribe three times per day the medicine more than likely will not be delivered;" (3) medication delivery "depends on many things coming together in the morning that are sometimes out of control of the nurse;" and (4) Plaintiff would be scheduled for the pain management clinic. (Compl. Ex. A at 2). As to Grievance No. 626028, it was denied with the explanation that: (1) Plaintiff's medications had been ordered; (2) Defendant Korszniak cannot regulate who makes Sick-Call rounds since CCS rotates that duty; (3) any Sick-Call requests are scheduled for the following day; and (4) all pain management is at the doctors' discretion and must be discussed with the doctors because Defendant Korszniak "cannot tell a provider how to practice medicine." (Compl. Ex. B at 2).

On May 30, 2016, Defendant Dr. Christian saw Plaintiff at SCI Graterford. (Compl. ¶24). Plaintiff relayed to Defendant Dr. Christian that Defendant Dr. Burkholder said that his pain was a medical issue, but Defendant Dr. Christian allegedly "still refused to treat plaintiff or help him in any way." (*Id*. at ¶24). Between May 31 and June 8, 2016, Plaintiff alleges he had two Sick-Call appointments to which he was never taken, and one Sick-Call request that never resulted in an appointment. (*Id*. at ¶¶25-28). On June 12, 2016, Plaintiff submitted an appeal to the Facility Manager at SCI Graterford for the Initial Review Responses to both of his grievances. (*Id*. at ¶29).

4

On June 16, 2016, Defendant Dr. Bianco saw Plaintiff at SCI Graterford. (*Id.* at ¶30). Plaintiff alleges that Defendant Dr. Bianco reviewed Plaintiff's x-rays and identified two hairline fractures in the right side of Plaintiff's jaw, and that two of the screws from the plates on the left side of Plaintiff's jaw were screwed into Plaintiff's wisdom tooth. (*Id.* at ¶31). Plaintiff contends that the treatment Defendant Dr. Bianco prescribed Plaintiff included a soft diet, new medication, a CAT Scan, and an appointment for June 22, 2016, with Dr. Samee, an oral dental specialist at Temple. (*Id.* at ¶¶30, 68).

On June 21, 2016, Plaintiff was transferred from SCI Graterford to State Correctional Institute Mahanoy ("SCI Mahanoy"), despite his request to Defendant Korszniak to place the transfer on medical/dental hold to allow him to attend his pending appointment scheduled at Temple with Dr. Samee the following day. (*Id.* at ¶32). Plaintiff "believes" this transfer was made in retaliation for his grievances and complaints. (*Id.* at ¶32).

Between June 21 and July 28, 2016, while at SCI Mahanoy, Plaintiff had several medical appointments, received numerous medications, and underwent another CAT Scan. (*Id.* at ¶¶33-37). Plaintiff alleges that a doctor at SCI Mahanoy told him that the surgery performed by Defendant Dr. Roehm needed to be corrected and that he would have an appointment with an oral specialist on July 28, 2016. (*Id.* at ¶¶35-37).

Plaintiff received two Facility Manager's Appeal Responses, dated July 27, 2016,[6] upholding Defendant Korszniak's decisions on each of Plaintiff's grievances. (Compl. Ex. A at 4; Compl. Ex. B at 4). The Appeal Responses included a note that any delay in the issuance of the decisions would not affect Plaintiff's appeal rights. (*Id.*).

On July 28, 2016, Defendant Dr. Mulligan saw Plaintiff at SCI Mahanoy. (*Id.* at ¶38). Plaintiff alleges that Defendant Dr. Mulligan would not give a professional opinion on Plaintiff's dental issues, did not answer most of Plaintiff's questions, and told Plaintiff that if Plaintiff initiated legal action, he "would become an expert witness and [P]laintiff could not afford him." (*Id.*). Defendant Dr. Mulligan renewed Plaintiff's preexisting prescription, issued a prescription for another medication, and allegedly told Plaintiff that the infection in his mouth would require surgery. (*Id.*).

Plaintiff alleges that on July 29, 2016, he learned he was going to be transferred to SCI Graterford for an appointment at Temple. (*Id.* at ¶41). When he inquired further about his prospective transfer, he was told that he was actually going to be transferred to State Correctional Institution Chester ("SCI Chester") on August 2, 2016. (*Id.* at ¶¶45-46).

---

[6] Plaintiff did not specify any issuance or receipt date for these documents in the body of his complaint, but did include copies of the documents themselves as exhibits to his complaint, which bear the date July 27, 2016.

On August 3, 2016, Plaintiff returned to Temple for an appointment with Defendant Dr. Roehm, who allegedly ordered another CAT Scan and recommended another surgery for Plaintiff. (*Id*. at ¶¶47-48, 51). On August 17, 2016, Plaintiff had the CAT scan at Suburban Community Hospital. (*Id*. at ¶55). On September 6, 2016, Plaintiff returned to Temple for his second surgery. (*Id*. at ¶59). Plaintiff alleges experiencing a delay prior to his surgery and that proper protocol was not followed regarding his discharge. (*Id*. at ¶¶59-62). After the surgery, Plaintiff claims that an unnamed individual at Temple informed him that only one of the plates was removed because the plate and screws were hitting his wisdom tooth, which was the source of Plaintiff's complications and pain. (*Id*. at ¶60). Upon returning to SCI Chester, Plaintiff continued to have pain and received medication, but maintains that he was not treated for his facial swelling. (*Id*. at ¶¶63-65).

On an unspecified date, but after September 14, 2016, Plaintiff returned to Temple for another appointment with Defendant Dr. Roehm. (*Id*. at ¶¶65-66). Defendant Dr. Roehm allegedly informed Plaintiff that his wisdom tooth was the source of his pain, and he would need to have all four of his impacted wisdom teeth extracted. (*Id*. at ¶66). Plaintiff asked Defendant Dr. Roehm, "If the one wisdom tooth on the bottom left-hand side would have been removed during the first surgery before the plates were put in, would we have avoided all of the complications?" (*Id*. at ¶67). Plaintiff claims Defendant Dr. Roehm did not answer his question. (*Id*.).

On September 27, 2016, Plaintiff saw Dr. Samee at Temple. (*Id*. at ¶68). Plaintiff alleges that Dr. Samee expressed disapproval of Plaintiff's previous medical care, and wanted to remove Plaintiff's wisdom tooth, but could not because of Plaintiff's limited jaw mobility from the last surgery. (*Id*. at ¶¶68-69). Dr. Samee also allegedly told Plaintiff that "if [Dr. Samee] or Dr. Mulligan had done the surgery, they most likely would have removed the wisdom tooth before putting the plates in and avoid[ed] all complications." (*Id*. at ¶69).

On October 12, 2016, Plaintiff submitted an appeal to the Chief Secretary of Inmate Grievance and Appeals ("SOIGA") regarding the Facility Manager's Appeal Responses to his grievances. (*Id*. at ¶72). On October 20, 2016, Plaintiff received a notice dismissing the appeal because it "was not according to Policy DC-ADM 804" (the Inmate Grievance System Procedures Manual). (*Id*. at ¶74). The Final Appeal Decision Dismissal indicated two reasons for the dismissal: (1) Plaintiff's final appeal was untimely, as Plaintiff did not submit his appeal within the requisite fifteen working days of the Facility Manager's decision, and (2) Plaintiff's final appeal did not include the required documentation for proper review. (Compl. Ex. A at 6; Compl. Ex. B at 6).

In November 2016, Plaintiff claims he was twice informed that he would have an appointment with an oral surgeon at the end of the month. (*Id*. at ¶¶76,

78). As of December 19, 2016, when Plaintiff filed his complaint, Plaintiff had not had any such appointment. (*Id.* at ¶79).

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11 (citing *Iqbal*, 556 U.S. at 677). The court must determine whether the plaintiff has pled facts sufficient to show a plausible entitlement to relief. *Fowler*, 578 F.3d at 211. If the pled facts only allow the court to *infer the mere possibility* of misconduct, then the complaint has only alleged, and not *shown*, that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)) (emphasis added). Thus, the plaintiff "must allege facts sufficient to 'nudge [his or her] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. After construing the complaint in the light most favorable to the plaintiff, if the court finds that the plaintiff could not be entitled to relief, it can dismiss the claim. *Fowler*, 578 F.3d at 210.

While complaints and submissions filed by *pro se* litigants are subject to particularly liberal interpretation and are held "'to less stringent standards than formal pleadings drafted by lawyers,'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), the court still must ensure that a *pro se* complaint contains "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Fantone*, 780 F.3d at 193 (citing *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

In their motions to dismiss, Moving Defendants argue several grounds for dismissal, *inter alia*, that Plaintiff failed to exhaust his administrative remedies and failed to plead facts sufficient to establish both deliberate indifference and retaliation. These arguments will be discussed *seriatim*.

*Failure to Exhaust Administrative Remedies*

The Prison Litigation Reform Act of 1955, 42 U.S.C. § 1997e (the "PLRA") applies to actions brought by an inmate with respect to prison conditions. 42 U.S.C. § 1997e(a). Under the PLRA, prison conditions include retaliation and deliberate indifference claims. *See Mitchell v. Horn*, 318 F.3d 523 (3d Cir. 2003) (applying the PLRA to an inmate's First, Fifth, Eighth, and Fourteenth Amendment claims); *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001) (applying the PLRA to an inmate's First Amendment retaliation claim). An inmate must, however, exhaust all administrative remedies before filing suit and, if the inmate fails to do so, the claims must be dismissed. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 101 (2006). Ordinarily, a plaintiff's claims can be reinstated after the plaintiff has rectified the deficiency by exhausting the administrative remedies; however, if the deficiency of the claims cannot be rectified because the administrative remedies cannot be properly exhausted, then the claims can never be reinstated. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (holding that dismissal for failure to exhaust is generally without prejudice and does not bar reinstatement of the suit unless it is too late to exhaust the administrative remedies).

The Supreme Court has held that administrative exhaustion requires procedurally proper exhaustion. That is, a prisoner must have complied with whatever regulations the prison established to govern inmate grievances and, in particular, the exhaustion requirement is not

satisfied if a prisoner files an untimely or otherwise procedurally defective grievance or appeal. *Woodford*, 548 U.S. at 89; *see also, Spruill v. Gillis*, 372 F.3d 218, 222, 231 (3d Cir. 2004). District courts in this Circuit should use the prison's grievance system policy to determine whether a prisoner failed to properly exhaust a claim by way of procedural default. *Spruill*, 372 F.3d at 231. In Pennsylvania, the grievance system policy is set forth in the Inmate Grievance System Procedures Manual ("DC-ADM 804").[7]

Here, the allegations in Plaintiff's complaint, along with the exhibits attached and referenced therein, show that Plaintiff did not administratively exhaust his claims and will be unable to do so in the future. Despite having effectively followed DC-ADM 804 in the process of filing two grievances and two initial appeals, Plaintiff ultimately failed to abide by DC-ADM 804 in his final stage of appeal. As noted, on October 12, 2016, Plaintiff submitted an appeal to the Chief Secretary of Inmate Grievance and Appeal ("SOIGA"). According to the Final Appeal Decision Dismissal notice issued by SOIGA on October 20, 2016, Plaintiff's appeal was not in accordance with DC-ADM 804, as the appeal failed two procedural requirements: (1) Plaintiff's appeal was untimely, as Plaintiff did not submit it within the requisite fifteen working days from the date of the Facility Manager's decision, and (2) Plaintiff failed to provide SOIGA with the required documentation to consider his appeal. (Compl. Ex. A at 6; Compl. Ex. B at 6). Indeed, the Facility Manager's decisions were issued on July 27, 2016, (Compl. Ex. A at 4; Compl. Ex. B at 4), and Plaintiff did not file his appeal of those decisions until October 12, 2016, fifty-three

---

[7] DC-ADM 804 includes the following policy statement: "It is the policy of the Department that every individual committed to its custody shall have access to a formal procedure through which to seek resolution of the problems or other issues of concern arising during the course of confinement. For every such issue, there shall be a forum for review and two avenues of appeal. The formal procedure shall be known as the Inmate Grievance System." [ECF 24-2 Ex. B at 1; DC-ADM 804 § III].

9

working days after the Facility Manager's decision and, thus, thirty-eight days late.[8] (Compl. ¶72). Since SOIGA properly dismissed Plaintiff's appeal for being procedurally defective, Plaintiff failed to properly exhaust his administrative remedies, *Woodford*, 548 U.S. at 89; *Spruill*, 372 F.3d at 222, 231, and is unable to do so in the future because his untimeliness cannot be rectified. As such, Plaintiff's claims against Moving Defendants are barred for failure to exhaust all administrative remedies and, therefore, are dismissed.

---

[8] Plaintiff points out in his complaint that "SCI Graterford [also] did not follow the procedure of DC-ADM 804," but does not specify how the prison administrators deviated from the policy. (Compl. ¶74). This Court infers that Plaintiff is referencing the delay in the issuance of the Facility Manger's Appeal Responses, which the Facility Manager noted in the responses themselves. (Compl. Ex. A at 4; Compl. Ex. B at 4). However, the Facility Manager also explicitly noted in the responses that her delay in issuing a decision would not affect Plaintiff's appeal rights. (*Id.*). The Facility Manager's note to Plaintiff accurately reflects DC-ADM 804, which states that an inmate's deadline for appeal begins to run on the date of a Facility Manager's decision. [ECF 24-2 Ex. B at 18; DC-ADM 804 § 2(B)(1)(b)].

Plaintiff also added a hand-written note on his copies of the Facility Manager's decisions suggesting that he did not receive the decisions until sixty days after the issuance date. (Compl. Ex. A at 4; Compl. Ex. B at 4). However, because the DC-ADM 804 does not state that an inmate's time to appeal begins on the date that an inmate receives a Facility Manager's decision, but rather on the date of the decision itself, the date of Plaintiff's receipt of the decision is irrelevant. [ECF 24-2 Ex. B at 18; DC-ADM 804 § 2(B)(1)(b)]. Furthermore, DC-ADM 804 expressly provides a procedure available to an inmate if he or she desires an extension of the appeal deadline—specifically, if an inmate experiences an undue delivery delay for a variety of reasons, the inmate must notify the Chief Grievance Officer with a request and explanation. [ECF 24-2 Ex. B at 18; DC-ADM 804 § 2(B)(1)(b)]. Not only is Plaintiff's complaint devoid of any suggestion that he followed this procedure and requested an extension, but the comprehensive grievance file subpoenaed from SOIGA contains no record of such a request. [ECF 24 Ex. A]. Additionally, Plaintiff made no mention of the alleged delivery delay in his complaint or his final appeals themselves. (Compl. Ex. A at 6; Compl. Ex. B at 6).

Though unnecessary, as Plaintiff's own complaint and exhibits provide the facts which demand the aforementioned result, this Court is permitted to consider the language of the grievance policy itself because the policy is "an undisputedly authentic document that a defendant attach[ed] as an exhibit to a motion to dismiss [since] the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Spruill*, 372 F.3d at 223 (holding courts may consider undisputedly authentic documents "related to [a plaintiff's] grievances" in evaluating a §1983 claim for administrative exhaustion under the PLRA); *Dade v. Gaudenzia DRC, Inc.*, 2014 WL 47766, at *3 (E.D. Pa. 2014) (where a court considered the prison grievance policy attached by defendants to their motion to dismiss, in evaluating a §1983 claim for administrative exhaustion under the PLRA).

Notwithstanding the dismissal of all claims against Moving Defendants based on Plaintiff's failure to properly exhaust his administrative remedies, in the interest of judicial economy, this Court will address Moving Defendants' other arguments.

*Plaintiff's Eighth Amendment Deliberate Indifference Claims*

Plaintiff's Eighth Amendment claims are premised on allegations that Moving Defendants were deliberately indifferent to Plaintiff's serious medical needs in treating his broken jaw and subsequent pain. In their motions to dismiss, Moving Defendants argue that Plaintiff has failed to allege facts sufficient to establish the requisite deliberate indifference. This Court agrees with Moving Defendants' argument, but only as applied to those Defendants who are physicians and dentists.[9]

Under the Eighth Amendment, which prohibits cruel and unusual punishment, prison officials are required to provide basic medical care to inmates. U.S. Const. amend. XIII; *see Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In order to assert a viable Eighth Amendment medical care claim, an inmate "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. Thus, a plaintiff must allege facts sufficient to show: (1) that he or she had a serious medical need and (2) that a defendant was deliberately indifferent to that serious medical need.

Deliberate indifference requires the defendant to have been subjectively aware of the risk of harm to the inmate and to have consciously disregarded that risk. *Atkinson v. Taylor*, 316 F.3d 257, 262 (3d Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, claims of mere negligence or medical malpractice do not amount to deliberate indifference. *Singletary v.*

---

[9] This grouping of Defendants includes Defendants Dr. Burkholder, Dr. Bianco, Dr. Mulligan, Dr. Roehm, Dr. Golsorkhi, and Dr. Christian (collectively, "Defendant Doctors").

*Pa. Dep't of Corr.*, 266 F.3d 186, 193 n. 2 (3d Cir. 2001). Additionally, "where a prisoner has received *some* medical attention and the dispute is over the *adequacy* of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *U.S. ex rel. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979) (citation omitted) (emphasis added). A plaintiff's disagreements and displeasure with his or her medical care are also insufficient to state an Eighth Amendment claim. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *Spruill*, 372 F.3d at 235.

Here, Plaintiff has failed to allege sufficient facts to establish that Defendant Doctors consciously disregarded a serious risk of harm to his health.[10] While Plaintiff's complaint is filled with allegations of poor medical judgment and disagreements over the treatment rendered, at best such allegations suggest potential negligence or malpractice claims. Notwithstanding, Plaintiff pled, and it is undisputed, that medical decisions were made and treatment provided to him, which necessarily indicates that Defendant Doctors did not consciously disregard a risk to Plaintiff's health. *U.S. ex rel. Walker*, 599 F.2d at 575 n. 2. To the contrary, Plaintiff's complaint reveals that he was continuously treated for his various ailments beginning the day after his jaw was broken. His aggregate medical care consisted of two operations, numerous visits with at least ten different doctors both inside and outside of the prison system, x-rays, CAT Scans, and at least seven different medications. The facts pled manifest complaints and disagreements over the timespan between appointments, the medications Plaintiff did or did not receive, dosages of medications, and surgical decisions—all which pertain to the quality and correctness of medical

---

[10] Plaintiff does make the bald assertion that all of Moving Defendants' conduct was "intentional, reckless, or done with callous indifference [to Plaintiff's constitutional rights]," (Compl. ¶82), but, as Plaintiff himself seemingly acknowledged by including that assertion in the "Legal Claims" section of his complaint, such a statement is merely a legal conclusion or formulaic recitation of the state of mind element of a deliberate indifference claim, which this Court is not required to accept. *Twombly*, 550 U.S. at 555.

judgments. Such disagreements, however, are insufficient to sustain an Eighth Amendment claim. *White*, 897 F.2d at 110; *Spruill*, 372 F.3d at 235. Accordingly, Plaintiff's Eighth Amendment claims against Defendant Doctors fail as a matter of law, and are dismissed.

Although Plaintiff's allegations regarding Defendant Dr. Golsorkhi differ in some respects from the allegations against the other Defendant Doctors, the allegations against Defendant Dr. Golsorkhi also fail to plead facts sufficient to establish an Eighth Amendment claim. Specifically, Plaintiff alleged that Defendant Dr. Golsorkhi did not adequately treat his pain after surgery and refused to provide Plaintiff with the medication and dosage that Defendant Dr. Roehm, the doctor who performed the surgery, had recommended. Plaintiff appears to argue that this failure to provide Plaintiff with medication in accordance with Defendant Dr. Roehm's recommendations indicates that Defendant Dr. Golsorkhi was deliberately indifferent to his pain. Plaintiff's argument is misguided, since disagreements among doctors over a patient's medical care do not establish deliberate indifference, as there are "several acceptable ways to treat an illness." *White*, 897 F.2d at 110; *see also DeFranco v. Wolfe*, 387 F. App'x 147, 158 (3d Cir. 2010).

Generally, "as long as a physician exercises professional judgment[,] his behavior will not violate a prisoner's constitutional rights." *Brown v. Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) (citing *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982)). Further, when a prison doctor disagrees with a wholly private doctor's recommendation for an inmate's treatment, the prison doctor's judgment does not amount to deliberate indifference, absent evidence that the prison doctor had non-medical or malicious reasons for rejecting the other doctor's recommendation. *Baez v. Falor*, 2012 WL 4356768, at *45 (W.D. Pa. 2012) (holding that a prison doctor in the aforementioned circumstances was not deliberately indifferent in the absence

of allegations that (1) he had believed the private doctor's recommendation was medically necessary and yet chose to ignore the recommendation or (2) that he diverted from the recommendation for non-medical reasons). Plaintiff's complaint contains no allegations that Defendant Dr. Golsorkhi diverted from Defendant Dr. Roehm's recommendation for any non-medical or malicious reasons. To the contrary, Plaintiff alleged that Defendant Dr. Golsorkhi would not follow Defendant Dr. Roehm's recommendation "because of [the] long-term damage it could do to plaintiff." (Compl. at ¶21). Thus, it appears that Defendant Dr. Golsorkhi expressed concern for both Plaintiff's long-term health *and* his current pain in choosing to treat Plaintiff with a different medication regimen. Such a decision is well within a doctor's professional judgment. Because Plaintiff has not pled facts sufficient to establish that Dr. Golsorkhi's professional actions violated Plaintiff's Eighth Amendment rights, this claim is dismissed.

### *Plaintiff's First Amendment Retaliation Claims*

In his First Amendment retaliation claim against Moving Defendants, Plaintiff alleges that he was transferred from one prison to another in retaliation for the complaints and grievances he filed regarding his medical care. Moving Defendants argue that Plaintiff failed to allege facts sufficient to establish a retaliation claim. This Court agrees.

In order to assert a viable retaliation claim, a plaintiff must allege facts sufficient to show that: (1) the conduct that prompted the alleged retaliation was constitutionally protected conduct,[11] (2) the plaintiff suffered adverse action by prison officials "sufficient to deter a person

---

[11] Corrections Defendants argued in their motion to dismiss that inmates do not have a constitutional right to a grievance policy, and thus Defendant Korszniak's responses to the grievances do not set forth a constitutional claim. [ECF 17 at p.7]. It appears from Corrections Defendants' argument that they perceived Plaintiff's claim to be a due process access to the courts claim for failure of prison officials to address Plaintiff's grievances, [*id*. at p.7-8], as opposed to the First Amendment retaliation claim Plaintiff actually meant to assert. While it is not a dispositive issue in this case, this Court notes

of ordinary firmness from exercising his [constitutional] rights," and (3) the existence of a causal link between the plaintiff's exercise of his constitutional rights and the adverse action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citing *Rauser v. Horn*, 241 F.3d 330, 222 (3d Cir. 2001)). Further, "a defendant must be personally involved in the alleged action for liability to attach under section §1983." *Bonham v. Givens*, 197 F. App'x 148, 150 (3d Cir. 2006) (citing *Rizzo v. Goode*, 423 U.S. 362, 375-77 (1976)). Allegations of a defendant's personal involvement must be made with appropriate particularity, including the particulars of the conduct, time, place, and person responsible. *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005).

Here, Plaintiff's retaliation claims fail as a matter of law against all Moving Defendants because Plaintiff failed to plead any facts to show Moving Defendants' personal involvement in the adverse action, *i.e.* the prison transfer. Nowhere in Plaintiff's complaint did Plaintiff allege the identity of the individual or individuals responsible for his transfer. Regarding the Defendants who are private doctors, Defendants Dr. Roehm and Dr. Mulligan, Plaintiff did not allege *any* facts to support a First Amendment claim.[12] Specifically, Plaintiff did not allege, nor can he, that Defendants Dr. Roehm and Dr. Mulligan were prison officials and that they contributed in any way to Plaintiff's transfer. Regarding the Defendants who are prison-

---

that, *for the purposes of a retaliation claim*, filing grievances and lawsuits are constitutionally protected activities. *Wicker v. Shannon*, 2010 WL 3812351, at *6 (M.D. Pa. 2010) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981)).

[12] In Plaintiff's reply brief to Defendant Dr. Mulligan's motion to dismiss, Plaintiff appears to have recognized that he brought this claim against Defendant Dr. Mulligan in error. In his reply brief, Plaintiff agreed with Defendant Dr. Mulligan that Plaintiff pled no factual basis to show that Defendant Dr. Mulligan violated Plaintiff's First Amendment rights. [ECF 32 at p.2]. Plaintiff indicated he wished to withdraw the First Amendment claim against Defendant Dr. Mulligan because the pled facts indicated Defendant Dr. Mulligan only provided Plaintiff with a medical opinion, which, in Plaintiff's own words, "in and of itself is not enough facts to support a First Amendment claim." [*Id*.]. This Court accepts Plaintiff's withdrawal of the First Amendment claim against Defendant Dr. Mulligan and, therefore, dismisses the claim on that additional ground.

contracted doctors, Defendants Dr. Bianco, Dr. Burkholder, and Dr. Golsorkhi, Plaintiff did not allege that they in any way contributed to his prison transfer. As to Defendant Korszniak, the only Defendant against whom Plaintiff pled facts pertaining to the transfer, Plaintiff has not alleged that Defendant Korszniak controls inmate transfers nor that he was the individual responsible for Plaintiff's transfer.[13] Thus, Plaintiff's failure to name any actor as responsible for his transfer necessitates this Court's conclusion that his First Amendment claims against Moving Defendants are factually deficient and must be dismissed.

*State Law Medical Malpractice Claims*

Moving Defendants also argued that Plaintiff has not pled sufficient facts to assert state law medical malpractice claims.[14] In response, Plaintiff explicitly clarified that he is not asserting any medical malpractice claims.[15] [*See* ECF 25 at p. 4; ECF 27 at p. 4; ECF 28 at p. 4]. As Plaintiff did not intend to bring any medical malpractice claims, this Court need not address Moving Defendants' arguments regarding the purported medical malpractice claims. Thus, the

---

[13] The only fact Plaintiff pled pertaining to Defendant Korszniak and Plaintiff's transfer is contained in paragraph thirty-two of the complaint, in which he merely alleges that he requested Defendant Korszniak to have the already-ordered transfer placed on medical/dental hold. [Compl. ¶32]. This factual assertion is followed by the allegation that, "Plaintiff believed that the transfer was for the grievance. . . and the complaints." [*Id.*]. Plaintiff does not even assert that Defendant Korszniak rejected his request for a delay. Plaintiff's complaint is devoid of any assertion that Defendant Korszniak is responsible for transfers or made a decision that contributed to the prison administration's decision to order Plaintiff's transfer.

[14] In particular, Moving Defendants argue that Plaintiff failed to include a Certificate of Merit with his complaint supporting his allegations, as required by the Pennsylvania Rules of Civil Procedure.

[15] In his reply briefs, Plaintiff specifically stated that he is not bringing malpractice claims, but rather Eighth Amendment deliberate indifference claims, and noted that nowhere in his complaint did he mention a malpractice claim. [ECF 25 at p. 4; ECF 27 at p. 4; ECF 28 at p. 4].

argument is moot. However, had Plaintiff asserted such claims, this Court would decline to exercise supplemental jurisdiction over them in accordance with 28 U.S.C § 1367(c).[16]

*Leave to Amend*

The Third Circuit has directed district courts to provide a civil rights plaintiff with an opportunity to file an amended complaint when the original complaint is subject to dismissal under Rule 12(b)(6), "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245. This Court finds that any attempt to amend Plaintiff's complaint would be legally futile because his claims are barred for failure to fulfill the PLRA administrative exhaustion requirement—a deficiency which is impossible for Plaintiff to rectify in light of his procedural default in the grievance appeal process. Therefore, leave to amend the complaint is denied.

**CONCLUSION**

For the reasons stated herein, Moving Defendants' motions to dismiss are granted, and Plaintiffs' claims against Moving Defendants are dismissed. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

[16] Section 1367(c) gives district courts the discretion to decline to exercise supplemental jurisdiction over state law claims after the court has dismissed all of the federal claims over which it had original jurisdiction. *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009).